1

2

3

4

5

6

7

8       UNITED STATES DISTRICT COURT

9       EASTERN DISTRICT OF CALIFORNIA

10  ROBERT ELLIOT,

11          Plaintiff,                          No. 2:10-cv-2980 MCE KJN P

12      vs.

13  S. READDY,[1] et al.,

14          Defendants.                    ORDER[2]

15  _____/

16          Plaintiff is a state prisoner, who proceeds with court-appointed counsel, in this

17  civil rights action filed pursuant to 42 U.S.C. § 1983.  Currently pending before the court are four

18  separate motions to dismiss filed, respectively, by defendants McHenry Medical Group (Dkt. No.

19  72), Doctors Medical Center of Modesto and Doctors Hospital of Manteca (Dkt. No. 75),

20  defendants Beck and Liu (Dkt. No. 73), and defendants Reddy, Sahota, Gabriel, Monteiro,

21  ─────────────

22      [1]  The correct spelling of this defendant's name, as provided by her counsel, is "Reddy,"
which is used throughout the remainder of this order.  Counsel also notes the corrected spelling
23  of defendant Monteiro's name.  Counsel has agreed to verify the correct name of defendant
"Borges Gabriel," (possibly "Gabriel Borges," but referred to herein as "Gabriel.")

24      [2]  This matter is before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), Local
General Order No. 262, and Local Rule 302(c).  The undersigned has issued an order, rather than
25  findings and recommendations, because plaintiff has agreed to the dismissal of those defendants
dismissed herein.  Should any party object to this procedure, they shall file objections to this
26  order within seven (7) days after the filing date of this order.

1  Fransham and Walker (Dkt. No. 74).  All defendants seek dismissal of the claims against them

2  pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that plaintiff has failed to

3  allege facts sufficient to state a cognizable federal claim.  Plaintiff filed an opposition to each

4  motion. (Dkt. Nos. 76-9.)  All defendants filed replies.  (Dkt. Nos.  80-3.)

5  These matters were heard before the undersigned on March 21, 2013.  Attorney

6  Edward Jacob Lubarsky appeared on behalf of plaintiff.[3]  Attorney Stephanie Lee Roundy

7  appeared on behalf of the McHenry Medical Group, and defendants Beck and Liu; attorney

8  Randall R. McKinnon appeared on behalf of Doctors Medical Center of Modesto and Doctors

9  Hospital of Manteca; remaining defendants Reddy, Sahota, Gabriel, Monteiro, Fransham and

10  Walker were represented by Deputy Attorney General Oliver Robert Lewis.

11  For the reasons that follow, defendants' motions are granted in part and denied in

12  part, and plaintiff is granted leave to file a Second Amended Complaint.

13  I. Dismissals Stipulated to at the Hearing

14  For the reasons stated at the hearing, plaintiff's counsel agreed to the dismissal of

15  defendants McHenry Medical Group, Doctors Medical Center of Modesto, Doctors Hospital of

16  Manteca, and Dr. Alexander Liu without leave to amend.  Accordingly, each of those defendants

17  is dismissed pursuant to this order without leave to amend.

18  II.  Legal Standards for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

19  Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to

20  dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

21  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the

22  court must accept as true the allegations of the complaint in question, Erickson v. Pardus,

23  551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins

24  v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th

25  ────────────────

26  [3]  Plaintiff was previously represented by court-appointed counsel Lisa Danielle Angelo, who withdrew due to a conflict of interest.  (See Dkt. Nos. 65-6.)

2

1   Cir. 1999).  To survive dismissal for failure to state a claim, a complaint must contain more than

2   "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

3   of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  "Threadbare recitals

4   of the elements of a cause of action, supported by mere conclusory statements do not suffice."

5   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim upon which the court can

6   grant relief must have facial plausibility.[4]  Twombly, 550 U.S. at 570.  "A claim has facial

7   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

8   inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

9   Attachments to a complaint are considered to be part of the complaint for purposes of a motion to

10  dismiss for failure to state a claim.  Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542,

11  1555 n.19 (9th Cir. 1990).

12          A motion to dismiss for failure to state a claim should not be granted unless it

13  appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which

14  would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  "[I]n a line of

15  cases stretching back nearly 50 years, we have held that in dismissing for failure to state a claim

16  under Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the

17  pleading was made, unless it determines that the pleading could not possibly be cured by the

18  allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations and

19  internal quotation marks omitted).

20          In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may

21  generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

22

23          [4] In general, pro se pleadings are held to a less stringent standard than those drafted by
    lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The court has an obligation to construe
    such pleadings liberally.  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc);
24  Hebbe v. Pliler, 627 F.3d 338, 341-42 (9th Cir. 2010).  However, the court's liberal interpretation
    of a pro se complaint may not supply essential elements of the claim that were not pled.  Ivey v.
25  Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  "[T]he court is obligated
    to draw only reasonable factual inferences" in plaintiff's favor.  Porter v. Ollison, 620 F.3d 952,
26  958 (9th Cir. 2010) (citation omitted).

1    and matters properly subject to judicial notice." <u>Outdoor Media Group, Inc. v. City of</u>

2    <u>Beaumont</u>, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  However,

3    under the "incorporation by reference" doctrine, a court may also review documents "whose

4    contents are alleged in a complaint and whose authenticity no party questions, but which are not

5    physically attached to the [plaintiff's] pleading." <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th

6    Cir. 2005) (citation omitted and modification in original).  The incorporation by reference

7    doctrine also applies "to situations in which the plaintiff's claim depends on the contents of a

8    document, the defendant attaches the document to its motion to dismiss, and the parties do not

9    dispute the authenticity of the document, even though the plaintiff does not explicitly allege the

10    contents of that document in the complaint." <u>Id.</u>

11    III.  <u>Plaintiff's Factual Allegations</u>

12         Plaintiff is incarcerated under the authority of the California Department of

13    Corrections and Rehabilitation ("CDCR"), at the California Institution for Men, in Chino.

14    Plaintiff filed this action on November 5, 2010, while incarcerated at Folsom State Prison

15    ("FSP").  This action now proceeds on plaintiff's First Amended Complaint ("FAC"), filed

16    August 28, 2012.  (Dkt. No. 58.)

17         As set forth in the FAC, plaintiff underwent a CT scan in April 2009 that showed

18    a left kidney mass.  Defendant Dr. Reddy, a CDCR physician, diagnosed kidney cancer (renal

19    cell carcinoma), and recommended that plaintiff have his left kidney surgically removed (a left

20    nephrectomy).  Plaintiff responded that cancer did not run in his family, and that he did not wish

21    to have the surgery, and asked if there were other means of diagnosis or less invasive treatments.

22    Over the next several months, Dr. Reddy reportedly declined plaintiff's request for a second

23    opinion; told plaintiff that the surgery was a "no brainer," and that the cancer was spreading "as

24    we speak"; and informed plaintiff that he had only six months to live and would die in prison if

25    he didn't have the surgery.  (FAC ¶ 18.)  "Finally, after months of influence and coaxing by Dr.

26    Reddy, Plaintiff reluctantly agreed to the surgery as he was repeatedly informed he only had six

1   (6) months to live."  (Id.)

2          On October 6, 2009, Dr. Reddy completed a "Physician Request for Services"

3   form, requesting that plaintiff undergo a left nephrectomy.  (Cmplt. Exh. A (Dkt. No. 58-3 at 3).)

4   On October 8, 2009, defendant Monteiro, a registered nurse, approved the application.  (Id.)

5   Neither Reddy nor Monteiro first inquired, recommended or sought approval for a biopsy of

6   plaintiff's kidney.  (FAC ¶ 19.)

7          On November 23, 2009, defendant Dr. Sahota, a CDCR physician,[5] ordered a full-

8   body bone scan of plaintiff.  Dr. Sahota found that a "[t]ypical metastatic pattern is not present,"

9   and that the "bone scan is not suggestive of metastatic disease."  (Cmplt. Exh. B (Dkt. No. 58-3

10  at 5).)  However, "[a]t no time did Dr. Sahota inquire, recommend, or seek approval for a biopsy

11  of Plaintiff's kidney."  (FAC ¶ 20.)

12         On December 9, 2009, defendant Dr. Gabriel, a CDCR physician (see n.5, supra),

13  performed a renal flow study and renogram of plaintiff.  Dr. Gabriel found reduced function in

14  both kidneys (decreased clearance of 25 minutes on the left, and 26 minutes on the right, with

15  normal clearance being 10 minutes), but no evidence of an obstruction.  (Cmplt. Exh. C (Dkt.

16  No. 58-3 at 7-8.)  "At no time did Dr. Gabriel inquire, recommend, or seek approval for a biopsy

17  of Plaintiff's kidney."  (FAC ¶ 21.)

18         On December 21, 2009, plaintiff had a pre-operative appointment with defendant

19  Dr. Beck, at defendant McHenry Medical Group.  (FAC ¶ 22.)  Dr. Beck did not know which of

20  plaintiff's kidneys was affected, noting in pertinent part (id., Exh. D, Dkt. No. 58-3 at 10-1):

21          This patient has a CT scan which showed a 2.9 x 2.5 cm hypodense
            mass in the upper pole of the right kidney. . . . CT scan in April
22          2009 showed left renal mass subsequent to x rays at Mercy
            Hospital in Folsom showed a right renal mass.  I do not have these

23

24          [5]  Although plaintiff alleges that defendants Sahota and Gabriel were employed at Doctors
       Hospital of Manteca (see FAC, Dkt. No. 58 at 4, ¶¶ 20-1), the California Attorney General's
25     office indicated that both defendants were CDCR physicians during the relevant period and
       "never worked at Doctors Hospital of Manteca."  (Dkt. No. 82 at 2 n.1.)  Counsel for Doctors
26     Hospital of Manteca agreed.

1
2

> films so I am not sure which side it is on at this point. . . . CT scan shows no evidence of metastasis and bone scan is negative.  He has apparently had a chest x ray which is negative. . . .

3
4
5

> Impression/ Plan:  Kidney cancer.  I am not sure which side it is on at this point; probably the right.  We will get the films and assess the laterality, and schedule him for laparoscopic hand-assisted radical nephrectomy.

6
7

"At no time did Dr. Beck inquire, recommend, or seek approval for a biopsy of Plaintiff's kidney."  (FAC ¶ 21.)

8
9
10
11

On January 4, 2010, plaintiff underwent blood work in preparation for surgery, as ordered by Dr. Reddy.  "Again, Dr. Reddy did not inquire, recommend, or seek approval for a biopsy of Plaintiff's kidney before his recommended surgery was performed upon him."  (FAC ¶ 23.)

12
13
14
15

On January 6, 2010, plaintiff's left kidney was removed at Doctors Medical Center of Modesto, by defendant Dr. Beck and his assistant, defendant Dr. Liu.  "At no time did Dr. Beck or Dr. Liu inquire, recommend, or seek approval for a biopsy of Plaintiff's kidney before extracting it from Plaintiff's person."  (FAC ¶ 24.)

16
17
18

Upon review of the excised kidney, pathologist Dr. Cui discovered that the kidney was cancer-free.  (FAC ¶ 25).  Dr. Cui provided the following diagnosis (id., Exh. G, Dkt. No. 58-3 at 20):

19
20
21

> Left kidney, left radical nephrectomy:
> - Benign kidney with multilocular cyst.
> - No evidence of renal cell carcinoma.
> - Scattered minimal chronic inflammation.

22
23
24
25

On January 20, 2010, Dr. Beck informed plaintiff that the kidney he had removed was cancer-free, and that the mass seen on the original CT scan was only a cyst.  "When Plaintiff started to express frustration with the information he was receiving from Dr. Beck, Dr. Beck callously replied, 'You've been notified.'"  (FAC ¶ 26.)

26

////

On January 28, 2010, plaintiff filed the first of several administrative grievances alleging deliberate indifference to his serious medical needs.  Plaintiff also alleged FSP correctional defendants Fransham and Walker intentionally delayed the appeals process, to protect the medical defendants and forestall the timely filing of a civil action.  (FAC ¶¶ 27, 40.)

In addition to alleging that no defendant, at any time, inquired, recommended, or sought approval for a biopsy of plaintiff's kidney, plaintiff alleged, as to each medical defendant, that "[b]ased upon Plaintiff's information and belief, it is the custom and practice of the prison system by and through its medical employees and/or related staff to perform surgeries and/or provide unnecessary and expensive treatment upon inmates for profit and at the expense of the inmate's health."  (FAC ¶ 19 (Reddy & Monteiro); ¶ 20 (Sahota); ¶ 21 (Gabriel); ¶ 22 (Beck).)

IV.  Plaintiff's Legal Claims

Pursuant to his FAC, plaintiff makes the following claims against the following defendants (FAC, Dkt. No. 58 at 6-11):

Count One:  Deliberate indifference to plaintiff's serious medical needs, in violation of the Eighth Amendment, against defendants Reddy, Beck, Liu, Sahota, Gabriel, Monteiro, McHenry Medical Group ("MMG"), Doctors Medical Center of Modesto ("DMCM"), and Doctors Hospital of Manteca ("DHM").

Count Two:  Violation of plaintiff's First Amendment right to pursue his legal remedies through the administrative grievance process, against defendants Walker and Fransham.

Count Three:  Medical negligence, in violation of state law, against defendants Reddy, Beck, Liu, Sahota, Gabriel, MMG, DMCM, and DHM.

Count Four:  Negligence, against all defendants, based on the alleged breach of their respective duties owned plaintiff.

Count Five:  Violation of California Civil Code sections 51.7 and 52.1, against defendants Reddy, Beck, Liu, Sahota, Gabriel, Monteiro, MMG, DMCM, and DHM.

////

1    Plaintiff seeks compensatory, punitive and exemplary damages; an award of

2    interest, costs and reasonable attorney's fees; and any and all other remedies authorized by 42

3    U.S.C. § 1983, and California Civil Code sections 51.7 and 52.1.

4    The court addresses these claims ad seriatim, pursuant to defendants' motions to

5    dismiss, and subject to the dismissal of defendants Dr. Alexander Liu, McHenry Medical Group,

6    Doctors Medical Center of Modesto, and Doctors Hospital of Manteca, which are hereafter

7    referenced only as necessary to assess plaintiff's claims against the remaining defendants.

8    V.  Discussion

9        A.  Count One:  Eighth Amendment Deliberate Indifference Claim

10   Plaintiff alleges that defendants Reddy, Monteiro, Sahota, Gabriel and Beck

11   ("medical defendants"), were each deliberately indifferent to his serious medical needs, in

12   violation of the Eighth Amendment.  Plaintiff alleges that all individual medical defendants were

13   "deliberate[ly] indifferen[t] in allowing or causing the  . . . deprivation of Plaintiff's serious

14   medical needs, including but not limited to, wrongfully removing a key and healthy organ . . . ."

15   (FAC, Dkt. No. 58 at 7, ¶ 32.)  Plaintiff alleges that these "Defendants' wrongful acts were

16   substantial and more blameworthy than mere negligence" (id. ¶ 35); "malicious and oppressive

17   and done in conscious disregard for the rights and safety of Plaintiff" (id. ¶ 38); and "resulted in

18   further significant injury and unnecessary and wanton infliction of pain" (id. ¶ 33).

19   Defendants move to dismiss plaintiff's Eighth Amendment claims on the ground

20   that plaintiff has failed to allege sufficient facts to render the claims cognizable.

21       1.  Legal Standards

22   In order to state a claim for relief under the Eighth Amendment for inadequate

23   prison medical care, plaintiff must allege "deliberate indifference to serious medical needs." Jett

24   v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104

25   (1976)).  A medical need is serious if "the failure to treat a prisoner's condition could result in

26   further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v.

8

1   Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other

2   grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Deliberate

3   indifference is proved by evidence that a prison official "knows of and disregards an excessive

4   risk to inmate health or safety; the official must both be aware of the facts from which the

5   inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

6   inference."  Farmer, 511 U.S. at 837.  Mere negligence is insufficient for Eighth Amendment

7   liability.  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

8          "Prison officials are deliberately indifferent to a prisoner's serious medical needs

9   when they deny, delay, or intentionally interfere with medical treatment."  Hallett v. Morgan, 296

10  F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted).  Deliberate

11  indifference may be shown by the way in which prison officials provide medical care,

12  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988), or "may be shown by

13  circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually

14  knew of a risk of harm."  Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003).

15  Deliberate indifference in the medical context may also be shown by a purposeful act or failure to

16  respond to a prisoner's pain or possible medical need.  Jett, 439 F.3d at 1096.  However, a mere

17  difference of opinion between a prisoner and prison medical staff as to appropriate medical care

18  does not give rise to a § 1983 claim.  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

19         Whether a defendant had requisite knowledge of a substantial risk is a question of

20  fact, and a fact finder may conclude that a defendant knew of a substantial risk because the risk

21  was obvious.  Farmer, 511 U.S. at 842.  While the obviousness of the risk is not conclusive, a

22  defendant cannot escape liability if the evidence shows that the defendant merely refused to

23  verify underlying facts or declined to confirm inferences that he strongly suspected to be true.  Id.

24  Prisons officials may avoid liability by demonstrating "that they did not know of the underlying

25  facts indicating a sufficiently substantial danger and that they were therefore unaware of a

26  danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to

9

which the facts gave rise was insubstantial or nonexistent." Id. at 844.  Thus, a prison official

may avoid liability by presenting evidence that he lacked knowledge of the risk and/or that his

response was reasonable in light of all the circumstances.  Id. at 844-45; see also Wilson v.

Seiter, 501 U.S. 294, 298 (1991); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010).

      "[A] factfinder may conclude that a prison official knew of a substantial risk from

the very fact that the risk was obvious.  The inference of knowledge from an obvious risk has

been described by the Supreme Court as a rebuttable presumption, and thus prison officials bear

the burden of proving ignorance of an obvious risk. . . . [D]efendants cannot escape liability by

virtue of their having turned a blind eye to facts or inferences strongly suspected to be true . . . ."

Coleman v. Wilson, 912 F. Supp. 1282, 1316 (E.D. Cal. 1995), citing Farmer, 11 S. Ct. at 1191-

94 (internal quotation marks omitted).

      Stated differently:

> A prison official acts with "deliberate indifference ... only if the
> [prison official] knows of and disregards an excessive risk to
> inmate health and safety." Gibson v. County of Washoe, Nevada,
> 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal
> quotation marks omitted).  Under this standard, the prison official
> must not only "be aware of facts from which the inference could be
> drawn that a substantial risk of serious harm exists," but that
> person "must also draw the inference." Farmer v. Brennan, 511
> U.S. 825, 837 (1994).  "If a [prison official] should have been
> aware of the risk, but was not, then the [official] has not violated
> the Eighth Amendment, no matter how severe the risk." Gibson
> [v. County of Washoe], 290 F.3d [1175] at 1188 [(9th Cir. 2002)]
> (citation omitted).  This "subjective approach" focuses only "on
> what a defendant's mental attitude actually was." Farmer, 511
> U.S. at 839, 114 S.Ct. 1970.

Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir.  2004) (fn. omitted).

      "In the Ninth Circuit, the test for deliberate indifference consists of two parts.

First, the plaintiff must show a serious medical need by demonstrating that failure to treat a

prisoner's condition could result in further significant injury or the unnecessary and wanton

infliction of pain.  Second, the plaintiff must show the defendant's response to the need was

deliberately indifferent.  This second prong ... is satisfied by showing (a) a purposeful act or

failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the

indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation

and quotation marks omitted).

Finally, "'[i]n deciding whether there has been deliberate indifference to an

inmate's serious medical needs, we need not defer to the judgment of prison doctors or

administrators.'" Snow, supra, 681 F.3d at 985-86 (quoting Hunt v. Dental Department, 865

F.2d 198, 200 (9th Cir. 1989)).

2. Private Medical Providers Providing Services to CDCR

The court finds, for present purposes, that each of the named defendants, whether

employed directly by CDCR or as a private party contracting with CDCR,[6] are "state actors"

under Section 1983, and therefore properly named pursuant to plaintiff's Eighth Amendment

claims.  When a state contracts with a private party to provide medical care to its prisoners, the

obligations of the Eighth Amendment attach to the persons with whom the state contracts.  West

v. Atkins, 487 U.S. 42, 55-6 (1988).  As found by the Supreme Court:

> Whether a physician is on the state payroll or is paid by contract,
> the dispositive issue concerns the relationship among the State, the
> physician, and the prisoner.  Contracting out prison medical care
> does not relieve the State of its constitutional duty to provide
> adequate medical treatment to those in its custody, and it does not
> deprive the State's prisoners of the means to vindicate their Eighth
> Amendment rights.  The State bore an affirmative obligation to
> provide adequate medical care to [petitioner]; the State delegated
> that function to respondent []; and respondent voluntarily assumed
> that obligation by contract.

West, 487 U.S. at 56 (fn. omitted); see also George v. Sonoma County Sheriff's Department,

---

[6] Counsel for defendants noted at the hearing that defendant private medical entities,
dismissed herein, did not contract with defendant private physicians, but that these physicians
merely had "privileges" at defendant medical group and hospitals.  The only remaining private
medical defendant is Dr. Beck, who examined plaintiff at the McHenry Medical Group facility,
and performed plaintiff's surgery at the Doctors Medical Center of Modesto.  While the nature of
Dr. Beck's professional relationship with CDCR is not presently clear, this matter should be
clarified in plaintiff's Second Amended Complaint.

732 F. Supp. 2d 922, 933-36 (N.D. Cal. 2010), and cases cited therein (applying "public function test," pursuant to which, "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations") (citations and internal quotation marks omitted).[7]

### 3.   Analysis of Plaintiff's Eighth Amendment Claims

The court finds that plaintiff's allegations satisfy the first prong of the deliberate indifference analysis, see Jett, 439 F.3d at 1096, that is, that plaintiff had a serious medical need, demonstrated by the April 2009 CT scan showing a left kidney mass.

The court next addresses whether plaintiff's allegations satisfy the second prong of the deliberate indifference analysis, as set forth in Jett, specifically, whether defendants' respective and/or collective responses to plaintiff's serious medical need were deliberately indifferent.  Id.  The second element of this prong -- resulting harm -- is demonstrated for present purposes by the allegedly unnecessary removal of plaintiff's left kidney, in addition to plaintiff's allegations of additional harm, viz., the "unnecessary and wanton infliction of pain" (FAC ¶ 33); and "injury to his body and shock and injury to his nervous system and person, all of which injuries have caused and continue to cause Plaintiff several mental, physical and nervous pain and suffering" (id. ¶ 52).

////

---

[7]   The cases cited by defendants are inapposite.  (See Dkt. No. 75 at 5-6.)  In Harvey v. Harvey, 949 F.2d 1127 (11th Cir. 1992), relying on Spencer v. Lee, 864 F.2d 1376 (7th Cir. 1989), the court declined, on entirely different facts, to find that a private hospital became a "state actor" when plaintiff was placed there following an involuntary civil commitment for mental health treatment.  In each of the remaining cited cases, the courts declined to find that a private entity was a state actor simply because it received governmental funding and/or was governmentally regulated.  See Jackson vs. East Bay Hospital, 980 F. Supp. 1341, 1357 (N. D. Cal. 1997) (citing Mendez v. Belton, 739 F.2d 15, 18 (1st Cir. 1984); Blum v. Yarestsky, 457 U.S. 991, 1004 (1982); Rendell-Baker v. Kohn, 457 U.S. 830, 840-43 (1982).  None of these cases involve a correctional agency or institution formally contracting with a private party or entity to provide medical services to state prisoners.  Such relationships are governed by West, supra, 487 U.S. at 55-6, for the reasons set forth above.

1    Thus, the court's deliberate indifference analysis is narrowed to an assessment of

2 the first element of Jett's second prong -- each defendant's knowledge of an excessive risk to

3 plaintiff's health or safety by proceeding with the challenged conduct or alleged failure to act,

4 and subjective intent in so proceeding.  Remaining medical defendants Reddy, Sahota, Gabriel,

5 Monteiro and Beck assert that plaintiff's allegations fail to show that any of them knew that

6 plaintiff faced a substantial risk of serious harm, and that defendants disregarded that risk by

7 failing to take reasonable steps to abate it.  (Dkt. No. 74 at 8; Dkt. No. 73 at 7-8.)

8    Plaintiff broadly responds that, given the opportunity to conduct thorough

9 discovery (Dkt. No. 79 at 8), he will be able to prove that all defendants were deliberately

10 indifference to plaintiff's "true medical need" (id. at 10.)  Plaintiff explains that "what [he]

11 needed was a kidney biopsy or additional tests and investigation into the issue with his kidney.

12 Instead, because he was a prisoner, every single healthcare giver who treated him ignored the

13 evidence and deliberately pressured him into surgery to have his kidney removed."  (Id.)  "All

14 medical treaters of Mr. Elliot deliberately ignored the evidence because it was simply easier to

15 just have his kidney removed."  (Id. at n.3.)

16    More specifically, plaintiff has alleged that Dr. Reddy was deliberately indifferent

17 to plaintiff's serious medical need when she persuaded plaintiff to consent to the removal of his

18 left kidney, by insisting that the kidney was cancerous based only on a CT scan.  Plaintiff alleges

19 that Dr. Reddy was deliberately indifferent when she rejected plaintiff's request for a second

20 opinion, or less invasive treatment, and should have requested a biopsy or other diagnostic

21 testing before requesting the nephrectomy.  Plaintiff alleges that Registered Nurse Monteiro was

22 deliberately indifferent to plaintiff's serious medical need when she "rubber stamped" Dr.

23 Reddy's request for a nephrectomy without inquiring, recommending or seeking approval for

24 further diagnostic assessments.  Plaintiff alleges that Dr. Sahota was deliberately indifferent to

25 plaintiff's serious medical need when he failed to raise a cautionary flag after discovering that

26 plaintiff's November 2009 bone scan did not reveal a "typical metastatic pattern" or was

1   otherwise "suggestive of metastatic disease." (Dkt. No. 58-3 at 5). Similarly, plaintiff alleges

2   that Dr. Gabriel was deliberately indifferent to plaintiff's serious medical need when he failed to

3   assert caution upon finding no evidence of a kidney obstruction pursuant to plaintiff's December

4   2009 renal flow study and renogram. Plaintiff alleges that Dr. Beck, as the surgeon also

5   responsible for plaintiff's pre-operative assessment, was deliberately indifferent to plaintiff's

6   serious medical need when he "blindly and intentionally accepted the prison doctors' and

7   medical personnel's recommendations for treatment of Mr. Elliot," and that "had [Dr. Beck]

8   actually read Mr. Elliot's medical records, he may have noticed all the tests Mr. Elliot was given

9   pointed toward a non-cancerous issue with his kidney." (Dkt. No. 78 at 11.)

10          In addition to challenging the conduct of each defendant, plaintiff alleges that

11  defendants together pursued an unconstitutional course of treatment. See, e.g., Snow v.

12  McDaniel, 681 F.3d 978, 986 (9th Cir. 2012) (reversing summary judgment for defendants

13  because reasonable trier of fact could find that defendants were deliberately indifferent to

14  plaintiff's serious medical needs by denying hip surgery, despite providing medical care,

15  medications and specialist referrals); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (to

16  proceed on a deliberate indifference claim, plaintiff must allege "that the course of treatment the

17  doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose

18  this course in conscious disregard of an excessive risk to plaintiff's health") (internal citations

19  omitted).

20          Defendants contend that the allegations of the FAC state, at most, nothing more

21  than a medical negligence claim and/or a disagreement of medical opinion. "Mere negligence in

22  diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth

23  Amendment rights." Toguchi, supra, 391 F.3d at 1057 (citation and internal quotation marks

24  omitted). "A difference of opinion between a physician and the prisoner -- or between medical

25  professionals -- concerning what medical care is appropriate does not amount to deliberate

26  indifference." Snow, supra, 681 F.3d at 986 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.

1   1989)).

2          Defendants' arguments appear to be supported by the majority of the federal court

3   decisions reviewed by this court that considered similar factual allegations.  Several federal courts

4   have, on initial screening pursuant to 28 U.S.C. § 1915A, dismissed such deliberate indifference

5   claims with prejudice, finding no more than a medical negligence claim or difference of opinion.

6   See, e.g., Villegas v. Cate, 2012 WL 4863065 at *5 (E.D. Cal. 2012) ("That the [spinal] surgery

7   was later allegedly determined to be unnecessary or that it perhaps could have been avoided is

8   simply not enough to transform these events into a violation of Plaintiff's federal constitutional

9   rights. The requisite mental state has not been shown . . . ."); Williams v. California, 2008 WL

10  905418 (E.D. Cal. 2008) (denial of motion for reconsideration of screening order that dismissed a

11  claim for deliberate indifference premised on allegations that the removal of plaintiff's left parotid

12  (salivary gland), due to an apparent tumor, would have proven unnecessary if plaintiff had first

13  obtained a biopsy); Fullman v. Pennsylvania Dept. of Corrections, 2007 WL 257617, *3 (M.D.

14  Pa. 2007) (allegations that defendants "fail[ed] to cure [plaintiff's] infection and ma[de] incorrect

15  decisions in treatment by performing unnecessary surgeries," stated no more than a negligence

16  claim); see also Gargani v. Reno, 1993 WL 460660 at *1 (9th Cir. 1993) (affirming summary

17  judgment for defendants on plaintiff's deliberate indifference claim that defendants "performed

18  unnecessary surgery on his leg, causing him severe pain and requiring additional surgery;" the

19  court emphasized that plaintiff "was seen by medical personnel numerous times, that his

20  complaints were promptly addressed, and that additional corrective surgeries were undertaken to

21  allow his leg to heal properly and minimize his pain.")

22          Perhaps most persuasive for defendants is the opinion of Magistrate Judge O'Neill

23  in Merritt v. Dang, 2006 WL 657125 (E.D. Cal. 2006).  In Merritt, plaintiff alleged that he "was

24  wrongfully led to believe he had lung cancer which required an unnecessary surgery.  Plaintiff

25  states that the Defendants failed to order a biopsy which would have revealed that surgery was

26  unnecessary and would have prevented Plaintiff from believing he had cancer for approximately

10 months."  Id. at *1.  The court found these allegations insufficient to state an Eighth

Amendment claim, and dismissed the claim with prejudice, reasoning as follows (id. at *2):

> Plaintiff fails to state sufficient facts to raise a cognizable Eighth
> Amendment claim.  As noted above, Plaintiff must demonstrate that
> the Defendants "knew of and disregarded a serious risk to his
> health."  Here, Plaintiff contends that the Doctors treated him
> without first conducting a biopsy.  This constitutes Plaintiff's
> disagreement with the diagnosis.  Similarly, the allegation that the
> diagnosis was incorrect implies negligence or malpractice but does
> not state facts sufficient to raise an Eighth Amendment claim in a
> Section 1983 action.

Nevertheless, some courts have found similar facts sufficient to plead a deliberate

indifference claim.  See, e.g., Roberts v. Wentworth Douglas Hospital, 2009 WL 1473185

(D.N.H. 2009) (allegations that plaintiff received two unnecessary surgeries resulting in the

removal of his spleen and removal of a polyp from his vocal cord sufficient to state deliberate

indifference claim).  Still other courts, on similar facts, have dismissed plaintiff's deliberate

indifference claim with leave to file an amended claim.  See, e.g., Bartholomew v. Traquina, 2011

WL 4085479, *3 (E.D. Cal. 2011) (plaintiff did not presently allege "sufficient facts to show that

any defendant acted with the requisite intent of deliberate indifference" with the result that surgery

was performed on the wrong shoulder); Luna v. Cate, 2010 WL 4323025, *2 (E.D. Cal. 2010)

("As alleged, the complaint fails to state more than a possible medical malpractice claim against

the named Defendants" that they misdiagnosed plaintiff's injury and performed unnecessary

surgery, causing him additional knee problems.).

Most persuasive for plaintiff, of the sampling of cases reviewed by this court,

appears to be Thomas v. Hickman, 2006 WL 2868967 (E.D. Cal. 2006), in which the prisoner

challenged, inter alia, the surgical removal of her ovaries after being informed that she would be

undergoing only a cystectomy.  Plaintiff alleged deliberate indifference against individual medical

providers based, inter alia, on allegations that defendants failed to provide plaintiff with non-

surgical alternatives.  The court dismissed plaintiff's deliberate indifference claim as initially

framed because it failed to identify the alleged alternatives to surgery, failed to state how the

1   alleged misconduct was medically unacceptable under the circumstances, and failed to

2   demonstrate that defendants pursued surgery in conscious disregard of an excessive risk to

3   plaintiff's health.  However, finding that it was "possible that Plaintiff could allege additional

4   facts that would cure the deficiencies in Plaintiff's Eighth Amendment claim," id. at *17, the

5   court granted plaintiff leave to file an amended pleading that included realleged deliberate

6   indifference claims.

7          In the instant FAC, plaintiff has failed to specifically allege, for any defendant, his

8   or her alleged knowledge of risk to plaintiff by proceeding with the challenged conduct, and

9   subjective intent in doing so.  However, based on the statements of plaintiff's counsel at the

10  hearing, the court finds that it may be possible for plaintiff to allege facts sufficient to support his

11  deliberate indifference claims.  Federal Rule of Civil Procedure 15(a)(2) provides that leave to

12  amend a complaint should be "freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).

13  Rule 15 "is to be applied with extreme liberality."  Eminence Capital, LLC v. Aspeon, Inc., 316

14  F.3d 1048, 1051 (9th Cir. 2003).  "Four factors are commonly used to determine the propriety of a

15  motion for leave to amend.  These factors are: bad faith, undue delay, prejudice to the opposing

16  party, and futility of amendment."  Ditto v. McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007)

17  (citations and internal quotation marks omitted).  The decision to grant or deny a request for leave

18  to amend rests in the discretion of the trial court.  See California v. Neville Chem. Co., 358 F.3d

19  661, 673 (9th Cir. 2004).

20         These authorities support granting plaintiff leave to file a Second Amended

21  Complaint for the principal purpose of according plaintiff's current counsel the opportunity to

22  cure the deficiencies in plaintiff's deliberate indifference claims.  The court finds no

23  countervailing considerations due to bad faith, undue delay, prejudice or futility.  Ditto, 510 F.3d

24  at 1079.  It is not clear "that the pleading could not possibly be cured by the allegation of other

25  facts."  Lopez, 203 F.3d at 1127.  If plaintiff can allege sufficient facts to support a reasonable

26  inference that defendants were aware that the proposed surgical removal, and removal, of

1  plaintiff's kidney created an obvious or excessive risk to plaintiff's health and/or the potential for

2  inflicting unnecessary pain or harm -- yet proceeded with the surgical recommendation and

3  surgery -- then plaintiff will have stated cognizable Eighth Amendment claims.[8]

4          For these reasons, plaintiff's Eighth Amendment deliberate indifference claims

5  against defendants Reddy, Monteiro, Sahota, Gabriel, and Beck are dismissed with leave to

6  amend.

7          B.  Count Two:  First Amendment Denial of Access Claim

8          Plaintiff alleges a violation of his First Amendment right to access the courts by

9  defendant correctional officers Walker and Fransham, based on their alleged delay in processing

10 plaintiff's administrative grievances related to the allegations in this action.  Plaintiff's factual

11 allegations against these defendants, as set forth in the First Amended Complaint, are limited,

12 providing in pertinent part:

13              On January 28, 2010, Plaintiff filed the first of several grievances
               and/or appeals with Defendants Fransham and Walker of Folsom
14             State Prison, in connection with Defendants' deliberate indifference
               and/or reckless disregard for Plaintiff's serious medical needs
15             and/or care.  Based upon Plaintiff's information and belief, both
               Defendants intentionally caused Plaintiff's grievances and appeals
16             to be delayed with the further intent of causing Plaintiff not to be
               able to exhaust his administrative remedies before filing a timely
17             civil complaint.  (FAC at 6, ¶ 27.)

18             Defendants Fransham and Walker intentionally impeded the
               processing of Plaintiff's related administrative grievances in an
19             effort to protect prison officials and/or affiliates, including but not
               limited to Defendant Reddy, and in doing so, violated Plaintiff's
20             First Amendment right by prohibiting the petitioning for a
               governmental redress of grievances, including but limited to,
21             prohibiting the access to courts. . . . [¶] As a direct and proximate
               result of Defendants' violation of 42 U.S.C. § 1983, Plaintiff has
22             sustained injuries and damages.  [¶]  In addition, the conduct of
               Defendants . . . was malicious and oppressive and done in conscious
23             disregard for the rights of Plaintiff . . ."  (Id. at 8, ¶¶ 40, 42-3.)

24 ////

25 _____

26      [8]  Plaintiff's counsel stated at the hearing that he intended to drop the further argument set
   forth in the FAC that defendants were motivated by profit.

1       Prisoners have a fundamental constitutional right of access to the courts. <u>Lewis v.</u>

2 <u>Casey</u>, 518 U.S. 343, 346 (1996) (citing <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977)). "Under the

3 First Amendment, a prisoner has both a right to meaningful access to the courts and a broader

4 right to petition the government for a redress of his grievances." <u>Silva v. Di Vittorio</u>, 658 F.3d

5 1090, 1101-02 (9th Cir. 2011) (citations omitted). "In the interference line of cases, the Supreme

6 Court has held that the First Amendment right to petition the government includes the right to file

7 other civil actions in court that have a reasonable basis in law or fact. This right . . . forbids states

8 from erect[ing] barriers that impede the right of access of incarcerated persons." <u>Id.</u> at 1102-03

9 (citations and internal quotation marks omitted). "[P]risoners have a right under the First and

10 Fourteenth Amendments[9] to litigate claims challenging their sentences or the conditions of their

11 confinement to conclusion without active interference by prison officials." <u>Id.</u> at 1103 (original

12 emphasis omitted).

13       To state a claim based on the alleged denial of access to the courts, plaintiff must

14 allege an actual injury. <u>Lewis</u>, 518 U.S. at 351. "Actual injury" is defined as "actual prejudice

15 with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or

16 to present a claim," that is, that "the alleged [violation] . . . hindered his efforts to pursue a legal

17 claim." <u>Id.</u> at 348, 351 (citations and internal quotation marks omitted).

18       Plaintiff fails to allege an actual injury based on the allegedly improper and

19 untimely processing of his administrative appeals, and such injury is not apparent from the FAC.

20 There is no indication that plaintiff was unable to exhaust his administrative remedies, or that his

---

[9] Plaintiff does not allege, and the court does not find, any basis for finding a Fourteenth Amendment due process challenge against defendants Walker and Fransham. As a general rule, a defendant's participation in the administrative processing of a plaintiff's inmate appeal does not give rise to a cause of action, particularly one premised on due process rights. <u>See</u>, <u>e.g.</u>, <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988), <u>cert. denied</u>, 488 U.S. 898 (1988) (no constitutional right to an inmate appeal or grievance process); <u>see also</u> <u>Buckley v. Barlow</u> , 997 F.2d 494, 495 (8th Cir. 1993) (prison official's involvement in administrative appeals process cannot serve as a basis for liability in a Section1983 action); <u>Azeez v. DeRobertis</u>, 568 F. Supp. 8, 10 (N.D. Ill. 1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.")

1  federal complaint was untimely filed.  Nor is there any allegation that the handling of plaintiff's

2  administrative grievances adversely impacted his medical care.  Because plaintiff has failed to

3  allege sufficient facts to support his First Amendment denial of access claim,[10] this claim will be

4  dismissed.  Plaintiff may, however, attempt to state a cognizable First Amendment claim in his

5  Second Amended Complaint.

6          For these reasons, plaintiff's First Amendment claims against defendants Fransham

7  and Walker are dismissed with leave to amend.

8      C.  Pendant State Law Claims

9          Plaintiff's remaining claims -- medical negligence, negligence, claims pursuant to

10  California Civil Code Sections 51.7 and 52.1, and a punitive damages claim -- are premised on

11  state law.

12          A federal district court has "supplemental jurisdiction over all other claims that are

13  so related to claims in the action within such original jurisdiction that they form part of the same

14  case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

15  Pursuant to this authority, a federal action involving both federal and nonfederal claims may

16  proceed if the claims "derive from a common nucleus of operative fact and are such that a plaintiff

17  would ordinarily be expected to try them in one judicial proceeding."  Finley v. United States, 490

18  U.S. 545, 549 (1989) (citation and internal quotation marks omitted).  However, absent a

19  cognizable federal claim, a federal district court may decline to assert supplemental jurisdiction

20

21          [10]  Nor does plaintiff state a First Amendment claim under a retaliation theory, despite
asserting that defendants acted intentionally and maliciously "in an effort to protect prison
officials and/or affiliates."  (FAC at 8, ¶¶ 40, 43.)

22          To state a claim for retaliation under the First Amendment, plaintiff must allege that, on a
specified date, an individual state actor took adverse action against plaintiff in retaliation for

23  plaintiff's engagement in a constitutionally protected activity, and that the adverse action did not
reasonably advance a legitimate penological goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68

24  (9th Cir. 2005); Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985).  Plaintiff must also
allege a chilling effect on the further exercise of his First Amendment rights, or another direct

25  and tangible harm.  Rhodes, at 408 F.3d at 568 n.11.  Plaintiff's allegations must establish a link
between the challenged conduct and defendant's allegedly retaliatory motive.  Pratt v. Rowland,

26  65 F.3d 802, 807 (9th Cir. 1995).

1  over plaintiff's pendant state law claims.  Rather, when federal claims that served as the basis for

2  federal jurisdiction are dismissed, a federal district court may decline to assert supplemental

3  jurisdiction over the remaining state law causes of action and exercise its discretion to remand

4  them to state court.  See 28 U.S.C. § 1367(c)(3).

5          Because the court dismisses plaintiff's federal claims, with leave to file a Second

6  Amended Complaint, the court takes no position on the merits of plaintiff's state law claims as

7  presented in the First Amended Complaint.  However, should plaintiff include pendant state law

8  claims in his Second Amended Complaint, the court notes the following considerations.

9          First, the court has found no authority to support a state law negligence claim

10  against a correctional officer for the alleged failure to properly and timely process an

11  administrative appeal.

12          Second, assuming that plaintiff's professional and general negligence claims

13  against the medical defendants are premised on the same challenged conduct, these claims should

14  proceed only on the professional negligence claims.  See Flowers v. Torrance Memorial Hospital

15  Medical Center, 8 Cal.4th 992, 996-1000 (1994) (rejecting independent theories of "ordinary" and

16  "professional" negligence based on same alleged facts against defendant medical providers);

17  accord, Bellamy v. Appellate Department, 50 Cal. App. 4th 797 (1996) (relying on Flowers to

18  sustain a professional negligence claim, construed as subsuming an ordinary negligence claim).

19          Third, a state negligence claim is subject to compliance with the claim presentation

20  requirements of the California Government Tort Claims Act ("CTCA"), which require that a

21  plaintiff, before filing suit, timely submit to the State Board of Control a claim against the public

22  defendant.  See Cal. Gov. Code §§ 900 et seq.  Such compliance is not merely a procedural

23  requirement, but a condition precedent to the plaintiff's ability to maintain a civil action against

24  the public defendant.  Harmon v. Mono General Hospital, 131 Cal. App. 3d 607 (1982).

25  Thereafter, in a civil action, plaintiff must affirmatively allege facts "demonstrating or excusing

26  compliance with the claim presentation requirement."  State v. Superior Court (Bodde), 32 Cal.4th

1  1234, 1243 (2004).

2  VI.  Conclusion

3          For the foregoing reasons, IT IS HEREBY ORDERED that:

4          1.  The motions to dismiss filed by defendant McHenry Medical Group (Dkt. No.

5  72), and defendants Doctors Medical Center of Modesto and Doctors Hospital of Manteca (Dkt.

6  No. 75), are granted, and the motion to dismiss filed by defendants Beck and Liu (Dkt. No. 73), is

7  granted in part and denied in part.

8          2.  Defendants Dr. Alexander Liu, McHenry Medical Group, Doctors Medical

9  Center of Modesto, and Doctors Hospital of Manteca, are dismissed from this action without

10  leave to amend.

11          3.  The motion to dismiss filed by defendants Reddy, Sahota, Gabriel, Monteiro,

12  Fransham and Walker (Dkt. No. 74), is granted, but with plaintiff granted leave to amend.

13          4.  Plaintiff is granted thirty (30) days from the filing date of this order to file and

14  serve a Second Amended Complaint.

15          SO ORDERED.

16  DATED:  March 26, 2013

17

18                                          _____

19                                          KENDALL J. NEWMAN
                                            UNITED STATES MAGISTRATE JUDGE

20  elli2980.mtns.dism

21

22

23

24

25

26