1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA

10   ROBERT ELLIOT,

11            Plaintiff,                    No. 2:10-cv-2980 MCE KJN P

12        vs.

13   S. REDDY,[1] et al.,

14            Defendants.                   ORDER

15   _____/

16   I.  Introduction

17            Plaintiff Robert Elliot is a state prisoner, proceeding with court-appointed

18   counsel, in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Currently pending before

19   the court is a motion to dismiss filed by defendant Dr. Phillip Beck, M.D., in response to

20   plaintiff's Second Amended Complaint.  Remaining defendants Dr. Shankari Reddy, M.D., and

21   Registered Nurse Colette Monteiro have answered the complaint; neither defendant has

22   participated in the pending motion.  Defendant Beck seeks his dismissal from this action on the

23   ground that plaintiff has failed to state a cognizable claim against him.  Fed. R. Civ. P. 12(b)(6).

24

25            [1]  At the conclusion of this order, the Clerk of Court will be directed to correct the
     spelling of this defendant's name from "Readdy" to "Dr. Reddy;" defendant RN Monteiro's
26   name will also be corrected from "Montieriro."  (See ECF No. 87 at 1 n.1.)

1

Plaintiff filed an opposition to the motion; defendant filed a reply.

The motion was heard before the undersigned on June 20, 2013.  Attorney Stephanie Lee Roundy appeared on behalf of defendant Dr. Beck; Edward Jacob Lubarsky appeared on behalf of plaintiff.

For the reasons that follow, defendant's motion is granted in part, and denied in part.

II.  Background

On March 27, 2013, this court ruled upon defendants' separate motions to dismiss plaintiff's First Amended Complaint ("FAC"), in tandem with plaintiff's voluntary dismissal of several defendants.  (ECF No. 87.)  Pursuant to that order, defendants Dr. Alexander Liu, McHenry Medical Group, Doctors Medical Center of Modesto, and Doctors Hospital of Manteca, were dismissed from this action.  The motion to dismiss filed by defendants Beck and Liu was granted in part and denied in part.  The motion to dismiss filed by defendants Reddy, Sahota, Gabriel, Monteiro, Fransham and Walker, was granted, but with leave for plaintiff to file a Second Amended Complaint ("SAC").  On April 25, 2013, plaintiff filed a SAC naming only three defendants:  Dr. Phillip Beck, Dr. Shankari Reddy, and Registered Nurse ("RN") Colette Monteiro.  (ECF No. 88.)  Therefore, defendants Sahota, Gabriel, Fransham and Walker will be dismissed from this action.

III.  Factual Allegations of the Second Amended Complaint

Plaintiff is a 61-year-old, African-American, prisoner incarcerated under the authority of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff filed this action on November 5, 2010, challenging events that took place while he was incarcerated at Folsom State Prison ("FSP").

The SAC is premised on the allegedly unnecessary surgical removal of plaintiff's left kidney, based on an incorrect diagnosis of kidney cancer.  Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs by promoting, facilitating and

1   performing the surgery, without conducting adequate diagnostic tests and procedures.  As a

2   result, alleges plaintiff, he lost a healthy kidney, and has since experienced unnecessary physical

3   and mental pain and suffering.  Plaintiff also alleges that the challenged conduct of the individual

4   defendants reflects the overcrowding of California prisons and the allegedly resulting

5   inadequacies in prisoner health care.

6         As alleged in the SAC, plaintiff underwent a CT scan in April 2009 that showed a

7   left kidney mass.  Defendant Dr. Reddy, a CDCR physician, reviewed the scan, diagnosed

8   kidney cancer, and recommended that plaintiff have his left kidney surgically removed (a

9   "nephrectomy").  Plaintiff reportedly told Dr. Reddy that cancer did not run in his family, that his

10  urine appeared normal, and that he did not wish to have the surgery.  Plaintiff alleges that Dr.

11  Reddy deliberately ignored plaintiff's lack of symptoms, and failed to order any additional

12  diagnostic tests or procedures, including a determination whether the kidney growth was "simple

13  or complex," and hence more or less likely cancerous.  (SAC ¶ 13-4.)

14        Over the next several months, Dr. Reddy allegedly rejected plaintiff's request for

15  a second opinion, and pressured plaintiff to undergo the surgery.  Dr. Reddy allegedly told

16  plaintiff that the surgery was "a no brainer."   In response to plaintiff's inquiry regarding a less

17  invasive treatment (e.g. chemotherapy), Dr. Reddy allegedly responded that the cancer was

18  spreading "as we speak," and told plaintiff that he had only six months to live and would die in

19  prison if he didn't have the surgery.  (SAC ¶ 15.)  "Finally, after months of influence and coaxing

20  by Defendant Reddy, M.D., and because of the coercive environment of prison, plaintiff

21  reluctantly agreed to the surgery, as he was repeatedly informed he only had six (6) months to

22  live."  (Id.)

23        On October 6, 2009, Dr. Reddy completed a "Physician Request for Services"

24  form, pursuant to which she sought approval for plaintiff to undergo a left nephrectomy.  "At no

25  time before she submitted the healthcare services physician request for service form did

26  Defendant Reddy, M.D., request any additional diagnostic procedures or consider Plaintiff's

1   medical history or lack of symptoms."  (SAC ¶ 16; Exh. A.)

2          Two days later, on October 8, 2009, defendant RN Monteiro approved the

3   application, "without any further inquiry or investigation."  (Id.)

4          "In or about November 2009, Plaintiff was sent to have a pre-operation

5   appointment at McHenry Medical Group in Modesto, California.  While being seen at McHenry

6   Medical Group, Plaintiff was rejected as a candidate for surgery because, as he was told, there

7   was not enough diagnostic information on Plaintiff to date to justify the invasive surgery

8   recommended, ordered, and approved by Defendants Reddy, M.D. and Monteiro, R.N."  (SAC ¶

9   17.)

10          Allegedly in response to the rejection of plaintiff as a surgical candidate by

11   McHenry Medical Group, CDCR physician Dr. Sahota ordered a full-body scan of plaintiff,

12   which was conducted on November 23, 2009.  The scan was "not suggestive of metastatic

13   disease."  (SAC ¶ 18; Exh. B.)

14          On December 9, 2009, CDCR physician Dr. Gabriel performed a renal flow study

15   and renogram on plaintiff.  Dr. Gabriel allegedly found reduced function in both kidneys but no

16   evidence of an obstruction.  (SAC ¶ 19; Exh. C.)

17          "In or about December 2009, Plaintiff saw Defendant Reddy, M.D. again . . .

18   [who] informed Plaintiff that she could not tell him what the test results concluded because she

19   'is not a specialist.' . . . Defendant Reddy, M.D. either did not read said results or deliberately

20   and intentionally ignored the results in order to allow Plaintiff to proceed under her original

21   diagnosis and surgery recommendation. . . . Defendant Reddy, M.D. deliberately failed to submit

22   a second healthcare services physician request for services form with the new diagnostic

23   information available in order to allow Plaintiff to proceed under her original diagnosis and

24   surgery recommendation."  (SAC ¶ 20.)

25          On December 21, 2009, plaintiff was again brought to McHenry Medical Group

26   for a pre-operative appointment.  Defendant Dr. Beck, a Board-certified urologist and surgeon,

and Assistant Clinical Professor at the University of California, Davis, examined plaintiff and

reviewed his medical records.  (SAC ¶ 21.)  Dr. Beck's treatment notes indicate that plaintiff,

who previously had "[n]o surgeries ever,"  was "asymptomatic and has no pain, nausea, or

vomiting, chills or fever . . . [n]o dysuria, problems with urinating [or] hematuria."  (SAC, Exh.

D.)  Dr. Beck also noted that plaintiff's "CT scan shows no evidence of metastasis and bone scan

is negative."  (Id.)  Dr. Beck noted, however, that plaintiff's "[m]other is on dialysis with renal

failure.  Older brother that has kidney problems."  (Id.)  Dr. Beck diagnosed "kidney cancer,"

although he wasn't "sure which side it is on at this point," due to conflicting radiological/CT

evidence, but noted that he would, nevertheless, "schedule [plaintiff ] for laparoscopic hand-

assisted radical nephrectomy."  (Id.)  Dr. Beck noted that he "counseled" plaintiff "about the

operation including risks, possible complications versus benefits and he agrees."  (Id.)

        Plaintiff alleges (SAC ¶ 21):

> Despite the diagnostic reports and Plaintiff's lack of symptoms, Defendant Beck, M.D. deliberately ignored the evidence of a non-cancerous cyst in Plaintiff's kidney and agreed to proceed with the nephrectomy.  At no time did Defendant Beck, M.D. request any additional diagnostic procedures or consider Plaintiff's medical history or lack of symptoms.  Nor did Defendant Beck, M.D. attempt to determine whether Plaintiff's kidney growth was simple or complex, a further level of investigation that is uncomplicated and would provide a more accurate accounting of Plaintiff's cancer potential.  Likewise, Defendant Beck, M.D. did not inquire of Defendant Reddy, M.D. or any other State employee of the same. Based upon Plaintiff's information and belief, it is the custom and practice of the prison system by and through its medical employees and/or related staff to "rubber stamp" prison physician recommended procedures and to perform surgeries and/or provide unnecessary and expensive treatments upon inmates without properly performing diagnostic tests and/or deliberately ignoring the results of said tests.  This is done with intentional and deliberate indifference to the prisoner's medical need as it is the "path of least resistence" for the medical treatment of inmates in an overburdened system.  This pattern and practice occurs at the expense of the inmates' health and because of the unequal power dynamic and coercive environment prisoners experience.

////

////

"On or about January 4, 2010, Plaintiff underwent blood work as ordered by Defendant Reddy, M.D., in preparation for surgery.  Despite Defendant Reddy, M.D.'s repeated claims to Plaintiff that he had six (6) months to live, Plaintiff was obviously still alive nearly a year later . . . . Defendant Reddy, M.D. deliberately ignored the mounting evidence that Plaintiff did not have cancer . . . ."  (SAC ¶ 22; Exh. E.)

On January 6, 2010, plaintiff's left kidney was removed at Doctors Medical Center of Modesto, by Defendant Dr. Beck and his assistant, Dr. Liu.  (SAC ¶ 23; Exh. F.)

Upon review of the excised kidney, pathologist Dr. Lui discovered that the kidney was cancer-free, that is, a "[b]enign kidney with multilocular cyst," and "[n]o evidence of renal cell carcinoma."  (SAC ¶ 24; Exh. G.).

On January 20, 2010, Dr. Beck informed plaintiff that the kidney he had removed was cancer-free, and that the mass seen on the original CT scan was a benign cyst.  "When Plaintiff  expressed frustration . . . Defendant Beck, M.D. callously replied, 'You've been notified.'"  (SAC ¶ 25; Exh. H.)

"Since Plaintiff's left nephrectomy, Plaintiff has and continues to suffer physical pain and mental anguish.  Plaintiff has been forced to alter his lifestyle, including his diet and exercise regime, because he now has only one kidney."  (SAC ¶ 26.)

On January 28, 2010, plaintiff requested a Prison Medical Board investigation. (SAC ¶ 27; Exh. I.)  The request was construed as an administrative grievance (Log No. FSP-26-10-10119), and denied at the First Level Review on March 24, 2010, by Dr. Sahota.  (Id., Exh. I.) The request was denied at the Second Level Review on May 10, 2010, by FSP Chief Physician Dr. Jasdeep S. Bal, M.D.  (Id.)  The request was denied at the Director's Level Review on September 27, 2010, by J. Walker, Chief of Third Level Appeals-Health Care, on the ground that plaintiff had consented to the procedure after Dr. Beck informed plaintiff of the potential surgical risks.  The decision acknowledged, however, that plaintiff had subsequently "received PCP [primary care physician] and nephrology follow-up encounters that noted you have had chronic

1  renal insufficiency since the procedure . . . ." (Id.)

2          Plaintiff filed another administrative grievance on April 12, 2010, requesting an

3  increase in his pain medication. (Log. No. FSP-26-10-10373.) Plaintiff averred that he had

4  experienced significant left side pain since his nephrectomy, that the "pain is higher than 10,"

5  that his dosage of morphine two times a day was not as effective as when it had been given three

6  times a day. The First Level Decision, rendered May 20, 1010, by Dr. Sahota, provided in

7  pertinent part (SAC; Exh. I):

8          You saw Dr. S. Reddy, M.D., a Folsom State Prison (FSP)
           physician, on May 5, 2010, to address your appeal issue. Dr.
9          Reddy evaluated you and noted that your gait was steady and you
           were seen walking and bending without distress. You are already
10         prescribed morphine at 15 mg twice a day as needed and you have
           been advised to take Tylenol in the evening. [However,]
11         [n]onsteroidal anti-inflammatory medications are not indicated
           because of your chronic renal insufficiency. There is no indication
12         to increase the morphine level at this time. Pain goals were
           discussed with you. You can follow-up in the evening if symptoms
13         worsen. Dr. Reddy ordered a back x-ray for you and she will
           follow up in the next week during your scheduled chronic care
14         appointment.

15         The grievance was denied at the Second Level Review on June 24, 2010, by FSP

16  Chief Physician Dr. Bal. While noting plaintiff's allegations that his Eighth Amendment rights

17  were violated by the unnecessary surgery, that he experienced resulting injury and constant pain,

18  Dr. Bal found that "[t]here are no new medical issues presented in your second level appeal . . . .

19  The first level response is still relevant and fully satisfied your concerns." (SAC; Exh. I.)

20         The grievance was denied at the Third Level Review on August 23, 2010, by

21  Appeals Chief J. Walker, based on the finding that "no compelling evidence . . . warrants

22  intervention at the Director's Level of Review," and that plaintiff's increased prescription for 30

23  mg morphine twice daily was adequate. (SAC; Exh. I.)

24         The factual allegations of the complaint conclude as follows (SAC ¶ 29):

25         Between January 2010 and August 2010, Plaintiff attempted to
           initiate the administrative appeals process to lodge his grievances
26         regarding his medical treatment with the California Department of

7

1   Corrections and Rehabilitation.  Plaintiff is informed and believes
2   these administrative appeals were intentionally delayed to prevent
    him from complying with the claim presentation requirements of
3   the California Government Tort Claims Act.  By the time Plaintiff
    exhausted his administrative appeals with the California
4   Department of Corrections and Rehabilitation, he had missed the
    deadline to timely submit his claims against public defendants to
5   the State Board of Control.

6   IV.  Legal Claims and Relief Sought

7            Pursuant to his SAC, plaintiff makes the following claims (ECF No. 58):

8            Count One:  Deliberate indifference to plaintiff's serious medical needs, in

9   violation of the Eighth Amendment, as applied to the states by the Fourteenth Amendment,

10  against defendants Dr. Reddy, Dr. Beck and RN Monteiro.

11           Count Two:  Medical malpractice/negligence, in violation of state common law,

12  against defendants Dr. Reddy, Dr. Beck and RN Monteiro.

13           Count Three:  Violation of California Civil Code sections 51.7 and 52.1, against

14  defendants Dr. Reddy, Dr. Beck and RN Monteiro.

15           Plaintiff seeks compensatory, punitive and exemplary damages; an award of

16  interest, costs and reasonable attorney's fees; and any and all other remedies authorized by 42

17  U.S.C. § 1983, California Civil Code sections 51.7 and 52.1, and any other relief deemed

18  appropriate by the court.

19  V.  Legal Standards for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

20           Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to

21  dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

22  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the

23  court must accept as true the allegations of the complaint in question, Erickson v. Pardus,

24  551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins

25  v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th

26  Cir. 1999).  To survive dismissal for failure to state a claim, a complaint must contain more than

8

"naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). "[I]n a line of cases stretching back nearly 50 years, we have held that in dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations and internal quotation marks omitted).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). However, under the "incorporation by reference" doctrine, a court may also review documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted and modification in original). The incorporation by reference

1   doctrine also applies "to situations in which the plaintiff's claim depends on the contents of a

2   document, the defendant attaches the document to its motion to dismiss, and the parties do not

3   dispute the authenticity of the document, even though the plaintiff does not explicitly allege the

4   contents of that document in the complaint." Id.

5   VI.  Discussion

6           The court addresses plaintiff's legal claims only insofar as they are challenged by

7   Defendant Dr. Beck pursuant to the instant motion to dismiss.  All claims remain viable against

8   defendants Dr. Reddy and RN Monteiro unless otherwise noted.

9       A.  Eighth Amendment Claim Against Defendant Beck

10          1.  Legal Standards

11          To state a claim for deliberate indifference to serious medical needs, in violation

12  of the Eighth Amendment's proscription against cruel or unusual punishment, a plaintiff must

13  allege that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or

14  safety; the official must both be aware of the facts from which the inference could be drawn that

15  a substantial risk of serious harm exists, and he must also draw the inference." Farmer v.

16  Brennan, 511 U.S. 825, 837 (1994).  Mere negligence is insufficient for Eighth Amendment

17  liability.  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

18          "In the Ninth Circuit, the test for deliberate indifference consists of two parts.

19  First, the plaintiff must show a serious medical need by demonstrating that failure to treat a

20  prisoner's condition could result in further significant injury or the unnecessary and wanton

21  infliction of pain.  Second, the plaintiff must show the defendant's response to the need was

22  deliberately indifferent.  This second prong . . . is satisfied by showing (a) a purposeful act or

23  failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the

24  indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation

25  and quotation marks omitted).  A mere difference of opinion between a prisoner and prison

26  medical staff as to appropriate medical care does not give rise to a Section 1983 claim.  Franklin

1   v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

2          Whether a defendant had requisite knowledge of a substantial risk of harm is a

3   question of fact.  "[A] factfinder may conclude that a prison official knew of a substantial risk

4   from the very fact that the risk was obvious.  The inference of knowledge from an obvious risk

5   has been described by the Supreme Court as a rebuttable presumption, and thus prison officials

6   bear the burden of proving ignorance of an obvious risk. . . . [D]efendants cannot escape liability

7   by virtue of their having turned a blind eye to facts or inferences strongly suspected to be true . . .

8   ."  Coleman v. Wilson, 912 F. Supp. 1282, 1316 (E.D. Cal. 1995), citing Farmer, 511 U.S. at

9   842-43 (internal quotation marks omitted).

10         When the risk is not obvious, the requisite knowledge may still be inferred by

11  evidence showing that the defendant refused to verify underlying facts or declined to confirm

12  inferences that he strongly suspected to be true.  Farmer, 511 U.S. at 842.  On the other hand,

13  prisons officials may avoid liability by demonstrating "that they did not know of the underlying

14  facts indicating a sufficiently substantial danger and that they were therefore unaware of a

15  danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to

16  which the facts gave rise was insubstantial or nonexistent."  Id. at 844.  Thus, liability may be

17  avoided by presenting evidence that the defendant lacked knowledge of the risk and/or that his

18  response was reasonable in light of all the circumstances.  Id. at 844-45; see also Wilson v.

19  Seiter, 501 U.S. 294, 298 (1991); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010).

20         In the context of allegedly unnecessary surgical procedures, this court previously

21  summarized the cases analyzing prison deliberate indifference claims (ECF No. 87 at 15-17):

22         Several federal courts have, on initial screening pursuant to 28
           U.S.C. § 1915A, dismissed such deliberate indifference claims
23         with prejudice, finding no more than a medical negligence claim or
           difference of opinion.  See e.g. Villegas v. Cate, 2012 WL 4863065
24         at *5 (E.D. Cal. 2012) ("That the [spinal] surgery was later
           allegedly determined to be unnecessary or that it perhaps could
25         have been avoided is simply not enough to transform these events
           into a violation of Plaintiff's federal constitutional rights. The
26         requisite mental state has not been shown . . . ."); Williams v.

California, 2008 WL 905418 (E.D. Cal. 2008) (denial of motion for reconsideration of screening order that dismissed a claim for deliberate indifference premised on allegations that the removal of plaintiff's left parotid (salivary gland), due to an apparent tumor, would have proven unnecessary if plaintiff had first obtained a biopsy); Fullman v. Pennsylvania Dept. of Corrections, 2007 WL 257617, *3 (M.D. Pa. 2007) (allegations that defendants "fail[ed] to cure [plaintiff's] infection and ma[de] incorrect decisions in treatment by performing unnecessary surgeries," stated no more than a negligence claim); see also Gargani v. Reno, 1993 WL 460660 at *1 (9th Cir. 1993) (affirming summary judgment for defendants on plaintiff's deliberate indifference claim that defendants "performed unnecessary surgery on his leg, causing him severe pain and requiring additional surgery;" the court emphasized that plaintiff "was seen by medical personnel numerous times, that his complaints were promptly addressed, and that additional corrective surgeries were undertaken to allow his leg to heal properly and minimize his pain.")

Perhaps most persuasive for defendants is the opinion of Magistrate Judge O'Neill in Merritt v. Dang, 2006 WL 657125 (E.D. Cal. 2006). In Merritt, plaintiff alleged that he "was wrongfully led to believe he had lung cancer which required an unnecessary surgery. Plaintiff states that the Defendants failed to order a biopsy which would have revealed that surgery was unnecessary and would have prevented Plaintiff from believing he had cancer for approximately 10 months." Id. at *1. The court found these allegations insufficient to state an Eighth Amendment claim, and dismissed the claim with prejudice, reasoning as follows (id. at *2):

> Plaintiff fails to state sufficient facts to raise a cognizable Eighth Amendment claim. As noted above, Plaintiff must demonstrate that the Defendants "knew of and disregarded a serious risk to his health." Here, Plaintiff contends that the Doctors treated him without first conducting a biopsy. This constitutes Plaintiff's disagreement with the diagnosis. Similarly, the allegation that the diagnosis was incorrect implies negligence or malpractice but does not state facts sufficient to raise an Eighth Amendment claim in a Section 1983 action.

Nevertheless, some courts have found similar facts sufficient to plead a deliberate indifference claim. See e.g. Roberts v. Wentworth Douglas Hospital, 2009 WL 1473185 (D.N.H. 2009) (allegations that plaintiff received two unnecessary surgeries resulting in the removal of his spleen and removal of a polyp from his vocal cord sufficient to state deliberate indifference claim). Still other courts, on similar facts, have dismissed plaintiff's deliberate

indifference claim with leave to file an amended claim. See e.g.
Bartholomew v. Traquina, 2011 WL 4085479, *3 (E.D. Cal. 2011)
(plaintiff did not presently allege "sufficient facts to show that any
defendant acted with the requisite intent of deliberate indifference"
with the result that surgery was performed on the wrong shoulder);
Luna v. Cate, 2010 WL 4323025, *2 (E.D. Cal. 2010) ("As
alleged, the complaint fails to state more than a possible medical
malpractice claim against the named Defendants" that they
misdiagnosed plaintiff's injury and performed unnecessary
surgery, causing him additional knee problems.).

Most persuasive for plaintiff, of the sampling of cases reviewed by
this court, appears to be Thomas v. Hickman, 2006 WL 2868967
(E.D. Cal. 2006), in which the prisoner challenged, inter alia, the
surgical removal of her ovaries after being informed that she would
be undergoing only a cystectomy. Plaintiff alleged deliberate
indifference against individual medical providers based, inter alia,
on allegations that defendants failed to provide plaintiff with
nonsurgical alternatives. The court dismissed plaintiff's deliberate
indifference claim as initially framed because it failed to identify
the alleged alternatives to surgery, failed to state how the alleged
misconduct was medically unacceptable under the circumstances,
and failed to demonstrate that defendants pursued surgery in
conscious disregard of an excessive risk to plaintiff's health.
However, finding that it was "possible that Plaintiff could allege
additional facts that would cure the deficiencies in Plaintiff's
Eighth Amendment claim," id. at *17, the court granted plaintiff
leave to file an amended pleading that included realleged deliberate
indifference claims.

Pursuant to these authorities, the court dismissed plaintiff's FAC on the ground

that plaintiff had "failed to specifically allege, for any defendant, his or her alleged knowledge of

risk to plaintiff by proceeding with the challenged conduct, and subjective intent in doing so."

(ECF No. 87 at 17.)  Nevertheless, "based on the statements of plaintiff's counsel at the hearing,

the court [found] that it may be possible for plaintiff to allege facts sufficient to support his

deliberate indifference claims."  (Id.)  On this basis, and pursuant to Rule 15(a), Federal Rules of

Civil Procedure, the court granted plaintiff leave to file a SAC that "allege[s] sufficient facts to

support a reasonable inference that defendants were aware that the proposed surgical removal,

and removal, of plaintiff's kidney created an obvious or excessive risk to plaintiff's health and/or

the potential for inflicting unnecessary pain or harm -- yet proceeded with the surgical

recommendation and surgery. . . ."   (ECF No. 87 at 17.)

2.  Analysis

Defendant Beck now contends that the allegations of the SAC fail to allege facts sufficient to state a deliberate indifference claim against him.  Dr. Beck's principal argument is that plaintiff's allegations state nothing more than a disagreement of medical opinion.  (See Motion to Dismiss, ECF No. 90 at 8-9; Reply, ECF No. 93 at 4-5.)  Plaintiff responds that "there is no difference in medical 'opinion' in this case" (ECF No. 91 at 11), because all involved medical providers agreed that plaintiff should undergo a nephrectomy.  The difference of opinion was and remains between plaintiff and defendants, which without more is not in itself actionable. Franklin, 662 F.2d at 1344.

Nevertheless, the court finds that plaintiff has now alleged sufficient facts from which to reasonably infer that Dr. Beck deliberately ignored the weight of the medical evidence indicating that plaintiff's kidney mass may be noncancerous.  The mass, detected through imaging, was initially diagnosed as kidney cancer by Dr. Reddy, a nonspecialist.  It appears that there was no other basis for reaching this diagnosis.  Pursuant to his review of plaintiff's medical records, Dr. Beck, an urological specialist and surgeon, specifically noted that  plaintiff's "CT scan shows no evidence of metastatsis and [his] bone scan is negative . . . [and] [h]e has apparently had chest x ray which was negative."  (SAC, Exh. D.)  With respect to plaintiff's renal flow study, Dr. Beck noted only that it showed "left side contributes 46% percent and the right side 54% of total renal function."  (Id.)  Dr. Beck's notation that plaintiff's mother was on dialysis for "renal failure," and his brother had "kidney problems" suggested hereditary kidney disease but not necessarily cancer.  Pursuant to his own examination of plaintiff, Dr. Beck found that plaintiff was "asymptomatic [with] no pain, . . . dysuria, problems with urinating [or] hematuria."  (SAC, Exh. D.)  For these reasons, the court finds that the SAC adequately alleges that Dr. Beck deliberately ignored this substantial evidence contraindicating cancer: "Despite the diagnostic reports and Plaintiff's lack of symptoms, Defendant Beck, M.D. deliberately ignored the evidence of a non-cancerous cyst in Plaintiff's kidney and agreed to proceed with the

1  nephrectomy." (SAC ¶ 21.)

2         Further, the court finds that the alleged facts support an inference that Dr. Beck

3  deliberately forewent the reasonable alternative of ordering further diagnostic tests or procedures

4  before proceeding with the nephrectomy.  A biopsy was certainly a potential, if invasive,

5  alternative.  However, as plaintiff alleges, there were additional diagnostic methods for

6  determining whether the kidney growth was "simple or complex" and, hence, more or less likely

7  cancerous.  Consultation with the referring doctor, Dr. Reddy, was also indicated.  As alleged in

8  the SAC (¶ 21):

9              At no time did Defendant Beck, M.D. request any additional
             diagnostic procedures or consider Plaintiff's medical history or
10            lack of symptoms.  Nor did Defendant Beck, M.D. attempt to
             determine whether Plaintiff's kidney growth was simple or
11            complex, a further level of investigation that is uncomplicated and
             would provide a more accurate accounting of Plaintiff's cancer
12            potential.  Likewise, Defendant Beck, M.D. did not inquire of
             Defendant Reddy, M.D. or any other State employee of the same.
13

14         The reasonable inferences taken in the light most favorable to the plaintiff are that

15  Dr. Beck deliberately ignored the weight of the medical evidence contraindicating cancer, and

16  deliberately forewent further diagnostic tests or procedures, and as underscored by Dr. Beck's

17  decision to proceed with the nephrectomy without knowing which kidney he would be removing.

18  Dr. Beck's resolve to proceed with the surgery without having this essential information supports

19  plaintiff's allegations that Dr. Beck's pre-surgical assessment was intentionally superficial; that

20  Dr. Beck merely "rubber stamped" the recommendation of Dr. Reddy and CDCR (SAC ¶ 21);

21  and that Dr. Beck's conduct was consistent with the "custom and practice of the prison system"

22  and its contractors to provide "unnecessary and expensive treatments . . . without performing

23  diagnostic tests and/or deliberately ignoring the results of said tests," which is the "'path of least

24  resistance' for the medical treatment of inmates in an overburdened system."  (Id.)  Dr. Beck was

25  the only urological specialist providing care to plaintiff; thus, plaintiff reasonably relied on Dr.

26  Beck's expertise and experience in assessing all pertinent factors before deciding to proceed with

1  surgery.  Nevertheless, plaintiff's factual allegations support the reasonable inference that Dr.

2  Beck discerned an "obvious risk" that the nephrectomy may be unwarranted, but deliberately

3  ignored that risk by scheduling the surgery before determining which kidney to remove.

4          As earlier noted, a defendant "cannot escape liability by virtue of . . . turn[ing] a

5  blind eye to facts or inferences strongly suspected to be true . . . ."  Coleman, supra, 912 F. Supp.

6  at 1316 (internal citation and quotation marks omitted).  Dr. Beck cannot reasonably assert, at the

7  motion to dismiss stage of the proceedings, that he lacked awareness of the obvious risks to

8  plaintiff, or that his decision to proceed with surgery was reasonable in light of all the

9  circumstances.  Farmer, 511 U.S. at 842-45.  Plaintiff's allegations against Dr. Beck assert more

10  than mistake, misdiagnosis, or failure to consider alternatives, which may support a medical

11  negligence claim.  Rather, unlike the majority of cases involving unnecessary surgeries, noted

12  above, plaintiff has adequately alleged the requisite subjective mental state and intent to support

13  his deliberate indifference claim -- that is, that Dr. Beck was "aware of facts from which the

14  inference could be drawn that a substantial risk of serious harm [to plaintiff] existed" by

15  proceeding with the surgery, and that Dr. Beck "drew this inference," but intentionally

16  disregarded it.  Farmer, 511 U.S. at 837; see also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th

17  Cir. 2004) (fn. omitted).

18          For these reasons, the court finds that plaintiff has adequately stated an Eighth

19  Amendment deliberate indifference claim against defendant Dr. Beck and, therefore, Dr. Beck's

20  motion to dismiss this claim is denied.

21      B.  State Law Claims

22          Plaintiff's remaining claims are premised on state law.  Because the court finds

23  that plaintiff's federal claim should proceed against defendant Dr. Beck (as well as defendants

24  Dr. Reddy and RN Monteiro), the court shall retain jurisdiction of plaintiff's viable state law

25  ////

26  ////

1   claims.  See 28 U.S.C. § 1367.[2]

2           1.  Medical Negligence Claim

3           Dr. Beck challenges neither the sufficiency of plaintiff's medical negligence

4   claim,[3] nor plaintiff's assertion that he was excused (see SAC ¶ 45) from the claim presentation

5   requirements of the California Tort Claims Act ("CTCA").[4]  Accordingly, this action shall

6   proceed on plaintiff's medical negligence claim against defendant Dr. Beck, as well as against

7   defendants Dr. Reddy and RN Monteiro.

8           2.  California Civil Code Sections 51.7 and 52.1

9           Defendant Beck moves to dismiss plaintiff's claims under California Civil Code

10  Sections 51.7 and 52.1, on the ground that plaintiff has failed to allege facts sufficient to state a

11  claim that Dr. Beck "threatened, intimidated or coerced plaintiff to undergo the surgical

12

13      [2] A federal district court has "supplemental jurisdiction over all other claims that are so
    related to claims in the action within such original jurisdiction that they form part of the same
14  case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).
    Pursuant to this authority, a federal action involving both federal and nonfederal claims may
15  proceed if the claims "derive from a common nucleus of operative fact and are such that a
    plaintiff would ordinarily be expected to try them in one judicial proceeding."  Finley v. United
16  States, 490 U.S. 545, 549 (1989) (citation and internal quotation marks omitted).

17      [3] "Under California law, '[t]he elements of negligence are:  (1) defendant's obligation to
    conform to a certain standard of conduct for the protection of others against unreasonable risks
18  (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close
    connection between the defendant's conduct and resulting injuries (proximate cause); and (4)
19  actual loss (damages).'"  Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting
    McGarry v. Sax, 158 Cal. App. 4th 983, 994 (2008) (internal quotation marks omitted)).  "In the
20  typical malpractice case a doctor negligently makes a mistaken diagnosis, administers the wrong
    treatment to his patient or fails to administer the right treatment because of that mistake, and
21  thereby injures the patient's physical or mental health."  Hoesl v. United States, 451 F. Supp.
    1170, 1173 (N.D. Cal. 1978), aff'd, 629 F.2d 586 (9th Cir. 1980).

22      [4] Plaintiff's compliance, or excuse from complying, with CTCA's claim presentation
    requirement is a prerequisite to suing on a state negligence claim.  Under the CTCA, a plaintiff
23  must demonstrate that, before filing suit, he timely submit a claim against the defendant to the
    State Board of Control.  See Cal. Gov. Code §§ 900 et seq.  Such compliance is not merely a
24  procedural requirement, but a condition precedent to the plaintiff's ability to maintain a civil
    action against the defendant.  Harmon v. Mono General Hospital, 131 Cal. App. 3d 607 (1982).
25  Thereafter, in a civil action, the plaintiff must affirmatively allege facts "demonstrating or
    excusing compliance with the claim presentation requirement."  State v. Superior Court (Bodde),
26  32 Cal.4th 1234, 1243 (2004).

procedure." (ECF No. 90 at 10.)  Dr. Beck contends, on the contrary, that "plaintiff discussed

all of his treatment options with Dr. Reddy and[,] after considering his options, he consented to

the surgery which was performed several months later."  (ECF No. 90 at 10; see also ECF No.

93 at 6.)

     At the hearing, plaintiff conceded to the dismissal of his claim under Section

51.7.[5]  Therefore, the court addresses only plaintiff's Section 52.1 claim.  The "Bane Act,"

California Civil Code section 52.1, provides in pertinent part:

> Any individual whose exercise or enjoyment of rights secured by
> the Constitution or laws of the United States, or of rights secured
> by the Constitution or laws of this state, has been interfered with,
> or attempted to be interfered with, as described in subdivision (a),
> may institute and prosecute in his or her own name and on his or
> her own behalf a civil action for damages, including, but not
> limited to, damages under Section 52, injunctive relief, and other
> appropriate equitable relief to protect the peaceable exercise or
> enjoyment of the right or rights secured.

Cal. Civil Code § 52.1(b).  Subdivision (a), California Civil Code section 52.1 proscribes

conduct that "interferes by threats, intimidation, or coercion, or attempts to interfere by threats,

intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of

rights secured by the Constitution or laws of the United States, or of the rights secured by the

Constitution or laws of this state," by any "person or persons, whether or not acting under color

of law."  Cal. Civ. Code § 52.1(b).  "To obtain relief under Civil Code section 52.1, a plaintiff

need not allege the defendant acted with discriminatory animus or intent; a defendant is liable if

he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation,

or coercion."  O'Toole v. Superior Court (2006) 140 Cal. App. 4th 488, 502, citing Venegas v.

County of Los Angeles (2004) 32 Cal. 4th 820, 841-43; see also Jones v. Kmart Corporation

(1998) 17 Cal. 4th 329, 334.

---

[5]  Based upon the concessions of plaintiff's counsel at the hearing, the dismissal of
various claims is accomplished through this Order rather than Findings and Recommendations.
However, if plaintiff's counsel objects to this approach, he may file objections within fourteen
days of the date of the Order.

1    The pertinent allegations of the SAC provide that "[d]efendants interfered with

2 or attempted to interfere with the Plaintiff's California constitutional rights by coercing Plaintiff

3 to undergo medical treatment and surgery that was not necessary and for an improper purpose"

4 (SAC ¶ 47); and that this "conduct of Defendants . . . was malicious and oppressive and done in

5 conscious disregard for the rights and safety of Plaintiff and his person. . . ." (Id. ¶ 50).

6    The court initially notes that plaintiff's Section 52.1 claim alleges a denial only

7 of plaintiff's "California constitutional rights."  (SAC ¶ 47.)  However, the court liberally

8 construes this allegation to include the denial of plaintiff's federal constitutional rights,

9 specifically, plaintiff's Eighth Amendment right to be free from deliberate indifference to his

10 serious medical needs.  As a general rule, a state law claim under Section 52.1 incorporates the

11 allegations of a contemporaneously-filed federal constitutional claim under Section 1983.  See

12 Cameron v. Craig, 713 F.3d 1012, 1022 (9th Cir. 2013) (Section 52.1 does not provide

13 substantive protections but a mechanism for seeking damages for violation of civil rights;

14 elements of excessive force claim the same under § 52.1 and § 1983); accord Love v. Salinas,

15 2011 WL 2620453, *7 (E.D. Cal. 2011) (claims are parallel); Sameth v. County of Los Angeles,

16 2011 WL 6937275, * 7 (C.D. Cal. 2011) (claims are essentially identical).

17    The court finds that plaintiff has adequately alleged sufficient facts to maintain

18 his Section 52.1 claim.  Plaintiff's concession to proceed with the surgery, despite his

19 reasonable misgivings, reflect not only the potentially inherently intimidating relationship

20 between prisoner and prison doctor, but the allegedly intimidating relationship between plaintiff

21 and Dr. Beck.  The SAC and supporting exhibits allege that Dr. Beck ignored clear medical

22 signs contraindicating kidney cancer, viz., Dr. Beck's own assessment that plaintiff was

23 "asymptomatic," a dearth of objective medical findings, and Dr. Beck's inability to ascertain,

24 from the available records, which kidney had the mass.  Nevertheless, plaintiff alleges, Dr. Beck

25 "rubber stamped" Dr. Reddy's surgical recommendation "without properly performing

26 diagnostic tests and/or deliberately ignoring the results of said tests," as was the alleged "custom

19

1   and practice of the prison system by and through its medical employees and/or related staff . . .

2   [due to] the unequal power dynamic and coercive environment prisoners experience." (SAC ¶

3   21.)  Dr. Beck was plaintiff's only urological specialist, with esteemed professional credentials;

4   plaintiff was singularly dependent on Dr. Beck to verify or reject Dr. Reddy's nonspecialist

5   assessment.  Yet, despite scarce medical support, Dr. Beck persuaded plaintiff, be it explicitly or

6   implicitly, that he had no reasonable alternative but to proceed with the surgery.  The court finds

7   that this alleged persuasion, in the context of alleged objectively inadequate medical support,

8   was intimidating and coercive to plaintiff, within the meaning of Section 52.1.

9          For these several reasons, the court finds that plaintiff has adequately stated a

10  claim against Dr. Beck under California Civil Code section 52.1.  Accordingly, this action shall

11  proceed on plaintiff's Section 52.1 claim against defendant Dr. Beck, as well as against

12  defendants Dr. Reddy and RN Monteiro.

13          3.  Punitive Damages

14          At the hearing, plaintiff conceded to the dismissal of his punitive damages

15  claim pursuant to California Code of Civil Procedure section 425.13.

16          The court notes, however, that plaintiff is entitled to seek the full range of

17  common law remedies pursuant to his Section 1983 claims.  A plaintiff may be awarded

18  "punitive damages in an action under § 1983 when the defendant's conduct is shown to be

19  motivated by evil motive or intent, or when it involves reckless or callous indifference to the

20  federally protected rights of others . . . even when the underlying standard of liability for

21  compensatory damages is one of recklessness."  Smith v. Wade, 461 U.S. 30, 56 (1983).

22  Additionally, plaintiff may obtain statutory "civil penalties" pursuant to his Section 52.1 claims.

23  See Cal. Civ. Code § 52.1(b) (authorizing an award of "damages, including, but not limited to,

24  damages under Section 52"); id., § 52 (authorizing award of actual and exemplary damages, and

25  civil penalty of $25,000).

26  ////

VII.  Conclusion

        For the foregoing reasons, IT IS HEREBY ORDERED that:

        1.  Pursuant to their exclusion from the Second Amended Complaint, defendants Sahota, Gabriel, Fransham and Walker are dismissed from this action.

        2.  Defendant Beck's motion to dismiss (ECF No. 90), is granted in part, and denied in part.

        3.  Plaintiff's state law claims pursuant to California Civil Code section 51.7 (Ralph Act), and California Code of Civil Procedure section 425.13 (punitive damages), are dismissed as to all defendants.

        4.  This action shall proceed against defendants Beck, Reddy and Monteiro on the following claims:  (1) Eighth Amendment deliberate indifference to serious medical needs; (2) state law medical negligence; and (3) California Civil Code section 52.1.

        5.  Defendant Beck shall file and serve an answer to the SAC within twenty-one (21) days after the filing date of this order; a Discovery and Scheduling Order shall issue thereafter.

        6.  The Clerk of Court is directed to correct, on the docket, the spelling of the following defendants' names:  from "Readdy" to "Reddy," and from "Montieriro" to "Monteiro."

DATED:  June 26, 2013

                        KENDALL J. NEWMAN
                        UNITED STATES MAGISTRATE JUDGE

elli2980.mtd.sac